## No. 7747.

ADÈLE PEDESCLAUX, WIFE OF P. LANDRY, vs. MARGARET C. LEGARÉ.

In April, 1869, there was no law of this State which declared the vendor's lien on real estate forfeited and lost if not recorded on the day of the contract.

The court feels obliged to accept the conclusions of counsel when they agree, as to matters of fact; but not so as to the law. That we take from the Code or Statute, and not from the counsel.

If a privilege exists it primes all mortgages.

APPEAL from the Fourth Judicial District Court, parish of Ascension. *Poché*, Judge *ad hoc.*

Edward N. Pugh for plaintiff and appellant:

First—We propose now to discuss the legal results *quoad* the ownership of this note flowing from Mrs. Landry, intrusting the husband with the administration of this note and the obtaining judgment on the same. This question was thoroughly ventilated in the leading case of Succession of Gilmore, 12 A. 562, where the doctrine is laid down " that where the wife's paraphernal property was sold and negotiable notes taken payable to the husband, and on which the husband sued the makers and obtained judgment, the legal ownership of the judgment was in the husband ; that the original notes were merged in and novated by the judgment, and that the judgment might be compensated by any debts equally liquidated due by the husband to the judgment debtor." C. C. 2362 ; 12 R. 525 ; 19 L. 440 ; 13 A. 537 ; 25 A. 288 ; 6 A. 110 ; 19 A. 457 ; 28 A. 164.

Second—We assert that if the husband becomes the owner of the property of the wife (8 A. 288), he necessarily owes her the value of that property, which is secured by mortgage. In conclusion, on this branch of the case, we say that Landry, in 1861, by novating the claim and re-loaning the money, assumed the ownership of the note, the paraphernal property of the wife, and became bound to her for $7000. If the court should hold that that act did not constitute a conversion, then we assert that the suit in 1865, on the new note, made Landry the owner of the judgment, and was a disposal of the same for his individual interest in the meaning of art. 2390 C. C. ; 4 N. S. 408 ; 6 A. 592 ; 2 A. 824 ; 18 L. 431 ; 20 A. 208 ; 21 A. 54 ; 18 A. 472 ; 2 A. 891 ; 16 A. 145.

Third—We understand that where the husband allows the wife to obtain judgment against him without proof, that then it is a consent decree ; but where the wife proves up her claim, the fact that the husband has not in some incidental matter insisted upon all the formalities of law, that this by no means has the effect of making the judgment a consent decree. 28 A. 547 ; 27 A. 687 ; 23 A. 279.

Fourth—On the question of erasure of mortgage without the consent or making the mortgagee a party, we refer your Honors to 20 A. 425 ; Herton vs. Cotton, 28 A. 334 ; 29 A. 550 ; Hin. IV. (b. 2), No. 7.

But grant for argument's sake that the judgment of separation in 1860 has lapsed for want of execution, would not the registry of this judgment in the book of mortgages of the parish of Ascension on the 29th of April, 1869, (where the property is situated) under the provisions of Act No. 95 of 1869, suffice to preserve the wife's mortgage?  8 A. 478 ; 29 A. 846 ; 10 A. 550 ; 30 A. 266 ; 31 A. 674.

Fifth—We repeat that article 123 and acts of 1869 were framed and made for the express purpose of doing away with tacit and latent mortgages ; that publicity of these claims was made a pre-requisite under the new order of things to their having effect against third persons.  Art. 123 recognized the existence of tacit mortgages, and did not prohibit them in the future.  It designated how their existence to affect third persons should be made to appear.  28 A. 365. If prior to the year 1869 plaintiff's judgment had been of record, there would have been no necessity of recording it again under the act of 1869.  23 A. 689, 363 ; 27 A. 406 ; 25 A. 613.

The object of registry is notice, and it certainly cannot be said that plaintiff's judgment, which was very full, did not convey to the practice all that the law required.  5 A. 225 ; 6 A. 242 ; 10 A. 502 ; 25 A. 643.

In 24 A. 190, as to the recording of inventory to preserve minor's mortgage under Act No. 95 of 1869.

Sixth—A privilege primes all mortgages. 31 A. 518 ; C. C. 3186, 3187, 3371.

Seventh—Question as to existence of vendor's privilege, the court says :

"In order to preserve his privilege, the law requires the vendor of an immovable or slave to cause the act to be duly recorded.  His privilege is valid against third persons from the date of the act, when such act has been duly recorded within six days from the date, etc.  C. C. 3238-3240.  But where the act has not been recorded within the time thus prescribed, article 3241 C. C. declares it shall have no effect as a privilege, that is to say, it shall confer no preference on the creditor who holds it over creditors who have acquired a mortgage in the meantime, which they have recorded before it ; it shall, however, still avail as a mortgage, and be good against third persons from the time of its being recorded.  In the case at bar, it is clear that the act of sale, in consequence of its non-registry within the time required by law, can only take effect in favor of the appellant from the date of its inscription, 6th of October, 1841."  18 A. 143 ; 20 A. 225, 80 ; 27 A. 407 ; 29 A. 416 ; 27 A. 246 ; 23 A. 286 ; 24 A. 610 ; 25 A. 232 ; 28 A. 80, 305, 536 ; 30 A. 833.

R. N. Sims for defendant and appellee :

First—Admitting, for the sake of argument, that the appellant did have
a valid judgment against her husband on the 5th of August, 1871,
. we maintain at the threshold of this discussion that the mortgage
resulting from the inscription of that judgment on the 29th of De-
cember, 1869, was wiped out and extinguished by the sheriff's sale
to Dr. Legaré.

Second—The mortgage granted by Landry on the 3d of April, 1869,
could not be enforced in part, but was made executory by the fiat
of the judge to the order of seizure and sale, as to all the stipula-
tions in the act which it was given to secure, particularly that clause
relating to his assumption of the antecedent mortgage debt due to
the Consolidated Association. The assumption by Landry of that.
ranking mortgage on the Souvenir plantation was as much a part.
of the consideration of the sale to him as the notes given by him to
represent the balance of the purchase price. Pepperktal vs. Dunlap,.
16 La. 170 ; Adams et al. vs. Lear et al. 3 An. 124.

Third—The failure to record the act of sale on the day on which it was
passed in the mortgage-book of the recorder's office could in no
manner affect the mortgage rights of the Consolidated Association ;
that mortgage, as we have seen, was given by Valery Landry in
1838.

Fourth—The judgment of separation is a nullity. It was rendered by
consent. Plaintiff's husband accepted service of her petition, and
waived delays ; and he allowed her to have a judgment entered up
against him for interest during thirteen years prior to any demand
for the restitution of her paraphernal property. No effort was ever
made to execute the judgment. No execution ever issued, and not
a single act appears to have been done showing any intention to
execute it. There was an utter absence of every legal requisite to
show a *bona fide* non-interrupted suit to obtain judgment.

Fifth—The only reason assigned for not having executed the judgment
was· that plaintiff's husband had no property subject to seizure.
Nothing prevented plaintiff from carrying on a *bona fide* suit to
obtain payment. She failed to comply with a positive injunction of
the law. The nullity related back to the rendition of the judgment,
and there was no dissolution of the community. C. C. 2428 ; 1 An.
308 ; 7 R. 73 ; 4 A. 513 ; 11 A. 696; 12 A. 193 ; 27 A. 401.

Sixth—The judgment being a nullity, the community was never dis-
solved, and the appellant cannot maintain her hypothecary action.
She is, and was, in 1869 and 1871, a partner in community with her
husband, liable for one half of the community debts. The prop-
erty against which she seeks to enforce her alleged mortgage was

sold by the sheriff in 1871, to pay a community debt. Plaintiff has never renounced the community. The wife stands in the position of a third person only after she has renounced the community. McDonough vs. Tregre et al. 7 N. S. 70; Succession of Déjean, 5. An. 594.

Seventh—Plaintiff's pretended tacit mortgage was never properly recorded.

Eighth—A voluntary separation of property is null as to all parties. C. C. 2427 ; 7 N. S. 48 ; 11 L. 533 ; 11 A. 696.

Ninth—C. C. 2428 ; Hennen, p. 901, No. 2.

Tenth—Plaintiff has not shown she ever had a valid claim against her husband. 29 A. 215 ; C. C. 2399, 2402.

Eleventh—The husband is not responsible for failing to collect funds or assets belonging to his wife during his administration of her affairs ; she can at any time resume the administration and protect herself. C. C. 2591 ; 15 An. 597 ; 20 An. 301 ; 10 A. 260 ; 12 A. 565.

Twelfth—The wife's proof of her demand against her husband must be strict, particularly where creditors are to be affected. 11 L. 559 ; C. C. 2367.

Thirteenth—The lien and privilege of the vendor were preserved by the recording of the act of sale simultaneously in the books of conveyance and mortgage. 27 A. 461, 237 ; 20 A. 80 ; C. C. 2266 ; 14 A. 345 ; 5 A. 197 ; 6 A. 771.

---

The opinion of the court was delivered by

SPENCER, J. On the 23d May, 1868, plaintiff obtained a judgment against her husband for $9050, with legal mortgage, etc., also dissolving the community, and restoring to her the administration of her separate estate. This judgment was advertised, but no execution was ever issued thereon, or other steps taken to satisfy it.

On 3d April, 1869, her husband, Landry, bought from Mrs. Walker, by public act passed in New Orleans, a sugar plantation situated in Ascension parish, for $40,000, of which $10,248 36 was paid in cash, and for the balance the vendee assumed a pre-existing mortgage on the property, and gave notes at one and two years. The vendor reserved special mortgage and vendor's lien on the property to secure the credit part of the price. This act of sale and mortgage was recorded simultaneously in the conveyance and mortgage books of Ascension, on the 14th April, 1869.

Landry having failed to pay the price, the vendor's mortgage and privilege were foreclosed by Dr. J. C. Legaré, the holder of the notes, and the property was adjudicated to him in August, 1871, at less than the debt due. In August, 1876, Dr. Legaré sold the plantation to the

defendant. About a year later (in 1877), the plaintiff commenced the present suit, which is an hypothecary action to subject said plantation to her legal mortgage.

The plaintiff's theory is, *that the law in force in April, 1869*, required, in order to preserve the vendor's lien, that the act of sale and mortgage should be recorded in the mortgage office *" on the day of the passage of the act."* And strangely enough, counsel for defendant has discussed this case at great length, upon that hypothesis.

When counsel agree as to what the facts of a case are, we feel obliged to accept their conclusions ; but not so as to the law. We take the law from the Code, and not from the counsel. The Revised Civil Code of 1870 was adopted only on the 14th March of that year. The provisions of that Code, therefore, are inapplicable to this case, and we must look elsewhere for the law governing it.

Art. 3240 of the Code of 1825 provides that the vendor's privilege on immovables is " valid against third persons *from the date of the act,* if it has been duly recorded, that is to say, *within six days of the date, if the act has been passed in the place where the registry of mortgages is kept,* or adding *one day more for every two leagues* from the place where the act was passed to that where the register's office is kept."

This article was amended and re-enacted in 1868 (see Act No. 126, approved September 29th), so as to read as follows : " The privileges enumerated in the two preceding articles " (i. e. those of the vendor and of architects, etc.,) " are valid against third persons *from the date of the recording the act or evidence of indebtedness,* as provided in the foregoing articles." The " foregoing articles " referred to simply require these privileges to be recorded in the mortgage registry of the parish where the property is situated. They fix no time within which the recording is to be done, under pain of forfeiture of privilege, as did the original art. 3240, and as did art. 3274 of the Code of 1870, which has been amended by act of 1877.

There was not therefore in existence on the 3d April, 1869, any law fixing *a delay* within which registry must be made in order to preserve the existence of the vendor's lien. On the contrary, the act of 1868, above quoted, provided that that privilege *should be valid* against third persons *from the day it was recorded.* There was no law forfeiting the privilege. There was no law which authorized a court to say that where an act was passed on the third and recorded on the fourteenth, the privilege was not preserved. The plaintiff's claim is by no means an equitable one, in that it is an effort to appropriate to herself property which her husband bought and never paid for ; and that to the prejudice of the vendor, who had not only a legal but moral right of revendication for this failure to pay. We are not disposed in

the interest of such a demand to extend forfeitures of just rights by implication. Nothing short of a positive enactment would justify our holding plaintiff's claims to be superior to those of the vendor.

We have said that as between a mortgage and a privilege the question of priority of registry could not arise ; that if the privilege existed at all it of necessity primes all mortgages as being higher in its nature. Jacob vs. Preston, 31 An. 518.

The vendor's privilege in the case before us did exist and was preserved by the registry on the 14th April. No law declared its forfeiture for failure to register on the 3d April, 1869.

If we applied the rule of the original article 3240 of the Code of 1825, the registry on 14th April was seasonable, for it is more than ten leagues from New Orleans, where the act was passed, to the parish seat of Ascension, where the property was situated.

We hold, therefore, that the vendor's lien was in full force in 1871, and that the sale thereunder passed the property to the purchaser free of plaintiff's alleged mortgage.

This view dispenses us from considering the many intricate questions raised and discussed by counsel.

The judgment appealed from is affirmed with costs.

Rehearing refused.